SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MATTHEW M. SONNE, Cal. Bar No. 239110
MOLLY M. BROOKS, Cal. Bar No. 329247
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone:  714.513.5100
Facsimile:   714.513.5130
E mail:   msonne@sheppardmullin.com
      mbrooks@sheppardmullin.com

Attorneys for Defendants
GOLD BOND BUILDING PRODUCTS, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PETERSEN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>GOLD BOND BUILDING PRODUCTS, LLC, a Limited Liability Company; and DOES 1-50, inclusive,<br><br>        Defendants. | Case No. 4:24-cv-617<br><br>(Removed from Contra Costa Superior Court, Case No. C23-03215)<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d), 1441, AND 1446**<br><br>[Filed concurrently with Declaration of Elizabeth Bergstrom; Declaration of Laura Budzichowski; Corporate Disclosure Statement; Certification of Interested Entities; and Civil Cover Sheet]<br><br>State Court Complaint Filed: December 19, 2023 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF, AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant Gold Bond Building Products, LLC ("Defendant") hereby removes the matter filed by Plaintiff Michael Petersen ("Plaintiff") in the case entitled <u>Michael Petersen v. Gold Bond Building Products, LLC., et al.</u>, pending in the Superior Court of the State of California in and for the County of Contra Costa, Case No. C23-03215, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332(d), 1441(b), and 1446.[1]/

Removal is based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. Sections 1332(d), 1441(b) and 1446, on the following grounds:

**I.    STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

1.    CAFA was enacted on February 18, 2005.  In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2.    This Court has jurisdiction over this case under CAFA, 28 U.S.C. Section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. Section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the primary defendants are not states, state officials or other governmental entities; (3) the total amount in controversy for all

---

[1]/ There is no requirement at the removal stage to attach evidence to support the allegations in the removal.  Rather, removal is governed by Rule 8 requiring only a "short and plain statement of the grounds for removal." <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S. Ct. 547, 553 (2014).

class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.  Each of these conditions was satisfied at the time this action was initiated and now at the time of removal.

3.    Further, while there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. Section 1332(d)(3)-(5), none of the exceptions are applicable here, as demonstrated hereafter.

4.    Venue is proper in this Court pursuant to 28 U.S.C. Sections 84(c), and 1391.

5.    As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.    **STATUS OF PLEADINGS**

6.    On or about December 19, 2023, Plaintiff filed a complaint in the Superior Court of the State of California in and for the County of Contra Costa, entitled <u>Michael Petersen v. Gold Bond Building Products, LLC., et al.</u>, Contra Costa County Superior Court Case No. C23-03215 (the "Complaint").

7.    A copy of the Complaint and related documents were served on Defendant Gold Bond Building Products, LLC on January 3, 2024.  True and correct copies of the Complaint, Summons, Civil Case Cover Sheet, CMC Notice – Complex, and Proof of Service of Summons are attached hereto as **Exhibits A-E**.

8.    Prior to filing this Notice of Removal, Defendant filed their Answer to the Complaint in Contra Costa County Superior Court and served its Answer on Plaintiff.  Attached hereto as **Exhibit F** is a true and correct copy of Defendant's Answer to the Complaint.

9.    This action has been filed as a California class action under California Code of Civil Procedure Section 382.  <u>See</u> Complaint, ¶¶ 6, 37.  California Code of Civil Procedure Section 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

10.     Plaintiff asserts in the Complaint that Defendant employed him and other persons who performed work for Defendant as non-exempt employees throughout the state of California.  See Complaint, ¶¶ 13, 16.

11.     The Complaint alleges that "[t]he members of the Classes are so numerous that joinder of all members would be unfeasible and not practicable."  See Complaint, ¶ 38.  On the basis of its own investigation, Defendant determined there are more than 100 current and former non-exempt and/or hourly-paid employees who worked for it in California during the four-year period prior to the filing of the Complaint.  Therefore, Plaintiff's proposed class consists of at least 100 members now at the time of removal and at the initiation of this civil action.

12.     Plaintiff's Complaint contains eight (8) causes of action.  These causes of action are for: (1) violation of California Labor Code Sections 204, 210, 510, 558, 1194, and 1198 (failure to pay all overtime wages); (2) violation of California Labor Code Sections 226.7 and 512(a), and Civil Code Sections 3287(b) and 3289 (meal period violations); (3) violation of California Labor Code Sections 226.7 and 516, and Civil Code Sections 3287(b) and 3289 (rest period violations); (4) violation of California Labor Code Sections 246, 558, 1194.2, 1197.1, 1198, and 119 (failure to pay all sick time); (5) violation of California Labor Code Section 226(a) (failure to provide accurate wage statements); (6) violation of California Labor Code Sections 201, 202, and 203 (waiting time penalties); (7) violation of California Labor Code Section 2802 (failure to reimburse for necessary business expenditures); and (8) violation of California Business & Professions Code Section 17200, et seq.[2] /  See Complaint.

---

[2] / The alleged damages calculations herein only include calculations of Plaintiff's potential class claims for unpaid overtime, meal and rest period claims, wage statement violations, and waiting time penalties.  A calculation of the alleged damages of each of Plaintiff's potential class claims would be much higher, but it is unnecessary for CAFA removal.

III. **JURISDICTION PURSUANT TO CAFA IS SATISFIED**

13.     Pursuant to Section 4 of CAFA, 28 U.S.C. Section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions."); Arias v. Residence Inn by Marriott, 936 F.3d 920, 922 (9th Cir. 2019) (holding that "a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements"). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exists." Dart Cherokee, 135 S. Ct. at 554. Evidence is required "only when the plaintiff contests, or the court questions, the defendant's allegation." Id. (emphasis added).

14.     The United States Supreme Court in Dart Cherokee held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" Id. Following Dart Cherokee, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal . . . ." Jordan v. Nationstar Mortg. LLC, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); see also Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively"). In Bridewell-Sledge v. Blue Cross, 798 F.3d 923 (9th Cir. 2015), the Ninth Circuit held that under Dart Cherokee, the district court erred "in its remand orders by applying a 'strong presumption against

removal jurisdiction.'"  Moppin v. Los Robles Reg'l Med. Ctr., 2015 WL 5618872, at *2 (C.D. Cal. Sept. 24, 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

### A.   Minimum Diversity Of Citizenship Exists Here

15.    CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state.  See 28 U.S.C. § 1332(d).

16.    Plaintiff is a resident and citizen of California.  See Complaint, ¶ 9. Plaintiff's last known address on file with Defendant is located in California. See Declaration of Elizabeth Bergstrom ("Bergstrom Decl.") at ¶ 3. As set forth in the Complaint, Plaintiff at all relevant times worked for Defendant in the County of Contra Costa, California.  See Complaint, ¶ 9.  Although no evidence of domicile is required at the notice of removal stage (Dart Cherokee, 135 S. Ct. at 554), "[p]roof of residence in a state is usually thought prima facie evidence of domicile."  Bradley Min. Co. v. Boice, 194 F.2d 80, 84 (9th Cir. 1951); see also Anderson v. Watts, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary . . . .").  Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change."  Mondragon v. Capital One Auto Fin., 736 F.3d 880, 885 (9th Cir. 2013). Accordingly, Plaintiff is a citizen of California for purposes of determining diversity.  See 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994) (residence is prima facie evidence of domicile for purposes of determining citizenship).

17.    For diversity purposes, a limited liability company is deemed to be a citizen of the state under whose laws it is organized and of the state where it has its principal place of business. 28 U.S.C. § 1332(d)(10); Ferrell v. Express Check Advance of SC LLC, 591 F.3d 698, 699-700 (4th Cir. 2010).

18.    A company's principal place of business is the state containing "'a substantial predominance of corporate operations.'" Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 500 (9th Cir. 2001) (quoting Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990)).

19.    The U.S. Supreme Court has issued clarification on the definition of a "principal place of business." In Hertz Corp. v. Friend, 130 S.Ct. 1181, 1192 (2010), the Supreme Court concluded that that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination." Hertz Corp., 130 S.Ct. at 1192.

20.    Under the foregoing standard, the facts here clearly establish that Defendant is now at the time of this removal, and was at the institution of this civil action, a citizen of Delaware and North Carolina for purposes of removal. Defendant is organized as a limited liability company under the laws of the State of Delaware, and maintains its corporate headquarters in Charlotte, North Carolina. See Declaration of Laura Budzichowski ("Budzichowski Decl." ¶¶ 3, 4. It is Charlotte, North Carolina where each of Defendant's respective high-level officers direct, control, and coordinate each of Defendant's activities. See Budzichowski Decl., ¶ 4. Defendant's executive operations are managed from their corporate headquarters. Id. Accordingly, Defendant's principal place of business is in North Carolina. Id.; 28 U.S.C. § 1332(c)(1).

21.     In accordance with the foregoing, Plaintiff is a citizen of the State of California, while Defendant is a citizen of the States of Delaware and North Carolina, which are the state of organization and the principal place of business for Defendant.  Thus, the minimum diversity requirement under CAFA is satisfied.

22.     Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332.  Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); Destfino v. Reiswig, 630 F.3d 952, 955-957 (9th Cir. 2011) (defendants not properly served need not join in a removal); Soliman v. Philip Morris, Inc., 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal).  Thus, the existence of Doe defendants 1 through 50, inclusive, does not deprive this Court of jurisdiction.

**B.     The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA**

23.     Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of himself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

24.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold."  Dart Cherokee, 135 S.Ct. at 554.  Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal.  Id.  A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages."  McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994).  A defendant can establish the amount in controversy by "provid[ing] only a short and plain statement of the grounds for removal."  Ehrman v. Cox Commc'ns, Inc., 932 F.3d 1223, 1225 (9th Cir. 2019); see also Dart Cherokee, 135 S. Ct. at 547 (holding that "a defendant's notice of

removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations").  Here, Defendant alleges there is more than $5,000,000 in controversy.

25.    CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds five million dollars ($5,000,000.00).  <u>See</u> 28 U.S.C. § 1332(d). By demonstrating that the actual amount in controversy exceeds the threshold, Defendant does not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will certify any class or recover anything.

26.    "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim."  <u>Henry v. Cent. Freight Lines, Inc.</u>, 692 F. App'x 806, 807 (9th Cir. 2017).  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  <u>Lewis v. Verizon Commc'ns., Inc.</u>, 627 F.3d 395, 400 (9th Cir. 2010); <u>Coleman v. Estes Express Lines, Inc.</u>, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe…") (aff'd by 631 F.3d 1010 (9th Cir. 2011)); <u>Muniz v. Pilot Travel Centers LLC</u>, 2007 WL 1302504, at *3 (E.D. Cal. Apr. 30, 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.").

27.    In the Ninth Circuit, the amount in controversy is determined "at the time of removal."  <u>Kroske v. US Bank Corp.</u>, 432 F.3d 976, 980 (9th Cir. 2005) (quoting <u>Singer v. State Farm Mut. Auto. Ins. Co.</u>, 116 F.3d 373, 376 (9th Cir. 1997).  In <u>Chavez v. JPMorgan Chase</u>, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them

from being part of the amount in controversy." <u>Id.</u> at 417.  <u>Chavez</u> held that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." <u>Id.</u> at 414-15.  The Ninth Circuit again affirmed these principles in <u>Fritsch v. Swift Transp. Co. of Ariz., LLC</u>, 899 F.3d 785 (9th Cir. 2018).

28.     Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction.  Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims.  Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

29.     Plaintiff's Complaint defines the putative class ("Proposed Putative Class") as: "All current and former non-exempt hourly employees who work or worked from Defendant in California, during the four years immediately preceding the filing of the Complaint through the date of trial." <u>See</u> Complaint, ¶ 37.

30.     Defendant independently determined based on its own business records that Plaintiff's Proposed Putative Class is comprised of approximately 197 non-exempt employees between January 1, 2021 and mid-January 2024. <u>See</u> Bergstrom Decl., ¶ 5.

31.     Defendant independently determined based on its own business records that between January 1, 2021 and mid-January 2024, the Proposed Putative Class worked approximately 14,747 workweeks. <u>See</u> Bergstrom Decl., ¶ 6.

32.     Defendant independently determined based on its own business records that during the period of January 1, 2021 to mid-January 2024, Defendant paid

Proposed Putative Class members an average hourly rate of approximately $32.97. <u>See</u> Bergstrom Decl., ¶ 10.

33.    Defendant independently determined based on its own business records that during the period of January 1, 2021 to mid-January 2024, Defendant paid Proposed Putative Class members an average hourly overtime rate of approximately $49.45. <u>See</u> Bergstrom Decl., ¶ 11.

34.    Defendant independently determined based on its own business records that between January 1, 2021 and mid-January 2024, at least 94 members of the Proposed Putative Class separated from their employment with Defendant.  <u>See</u> Bergstrom Decl., ¶ 7.

35.    Defendant independently determined based on its own business records that during the period of January 1, 2021 to mid-January 2024, Defendant paid Proposed Putative Class members who separated at any time January 1, 2021 to mid-January 2024 an average hourly rate at the time of separation of approximately $32.42.  <u>See</u> Bergstrom Decl., ¶ 8.

36.    Defendant independently determined based on its own business records that at least 160 members of the Proposed Putative Class were employed between December 19, 2022 and mid-January 2024.  <u>See</u> Bergstrom Decl., ¶ 9.

### a.    <u>Unpaid Overtime Compensation Claim</u>

37.    Labor Code § 1194 states that an employee receiving less than the legal minimum wage or the legal overtime wage is entitled the recover the amount owed in a civil action.

38.    For Plaintiff's overtime claim, Plaintiff alleges that "Plaintiff and other non-exempt employees regularly worked various shifts, many of which were in excess of 8.0 hours in a workday and 40.0 hours in a workweek. Plaintiff alleges that other non-exempt employees were also subjected to the same policies, procedures, and practices, working conditions, and corresponding wage and hour

SMRH:4878-5616-8609.2

violations to which she (sic) was subjected during his employment." <u>See</u> Complaint, ¶ 17.

39.    Plaintiff further alleges that, "Plaintiff and other non-exempt employees were not properly paid at the correct overtime rate for all overtime hours worked due to Defendant's uniform failure to include all forms of compensation/renumeration, including but not limited to, commissions, incentives, non-discretionary bonuses, and all other forms of remuneration in calculating the 'regular rate of pay' for the purposes of overtime compensation." <u>See</u> Complaint, ¶ 18.

40.    Plaintiff additionally claims that "by [Defendant's] policy of requiring Plaintiff and the other non-exempt employees to work in excess of eight (8.0) hours in a workday and/or forty (40.0) hours in a workweek without compensating them at the lawful rate of one-half (1 ½) their regular rate of pay, Defendant willfully violated the provisions of Labor Code Section 510 and the applicable Wage Orders." <u>See</u> Complaint, ¶ 21.

41.    Plaintiff does not, however, provide any details as to how many hours per day or week he and the Proposed Putative Class allegedly worked without compensation.

42.    Although Defendant denies Plaintiff's allegations or that he or Proposed Putative Class are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations, that employees worked, at minimum, 1-hour of unpaid time per week.

43.    Defendant employed approximately 197 putative class members from January 1, 2021 to mid-January 2024.  Should Plaintiff prevail on this claim on behalf of himself and putative class members, and conservatively assuming only one hour of overtime per week, the alleged damages would amount to approximately **$729,239** ($49.45/hour * 1 hour per week * 14,747 workweeks).

1

**b.** **Meal Periods**

2    44.    Labor Code Section 226.7 requires employers to pay an extra hour's

3   pay to employees who are not provided a meal period or a rest period.  See Lyon v.

4   W.W. Grainger, Inc., 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that

5   Labor Code section 226.7 provides recovery for one meal break violation per work

6   day and one rest break violation per work day).  The statute of limitations for

7   recovery for meal or rest period premium pay under California Labor Code Section

8   226.7 pay is three years.  Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094,

9   1099 (2007) ("[T]he remedy provided in Labor Code in the Complaint, Defendant

10   will conservatively assume that putative class members were not provided just one

11   meal period and one rest period each workweek.").  Plaintiff's UCL claim extends

12   the liability period of the meal and rest period violations claims to four years.  See

13   Cal. Bus. & Prof. Code Section 17208.  As such, the UCL's four-year statute of

14   limitations applies when determining the amount in controversy for this claim.

15    45.    For Plaintiff's meal period claim, Plaintiff alleges that "Plaintiff and

16   other non-exempt employees were denied compliant and timely 30-minute off-duty

17   meal periods as mandated by California law."  See Complaint, ¶ 25.

18    46.    Further, Plaintiff alleges that "Due to Defendant's uniform meal period

19   policies/practices, operational requirements, and work demands, Plaintiff and other

20   non-exempt employees often could not take timely and uninterrupted net 30-minute

21   first meal periods before the end of the fifth hour of work."  See Complaint, ¶ 25.

22    47.    Plaintiff alleges that "Plaintiff and other non-exempt employees often

23   could not take a second 30-minute uninterrupted and timely meal period for shifts in

24   excess of 10.0 hours."  See Complaint, ¶ 25.

25    48.    Plaintiff further alleges that "for each missed or non-compliant meal

26   period, Defendant failed and continues to fail and maintain a mechanism by which

27   non-exempt employees were paid meal period premiums at the 'regular rate of

28   pay.'"  See Complaint, ¶ 26.

49.    Notably, the Complaint is silent as to the amount of the alleged meal periods Plaintiff claims to have been denied.  Nonetheless, as noted above, the Complaint contemplates at least a 50 percent violation rate, if not a 100 percent violation rate, and such rate can be properly assumed for purposes of calculating the amount in controversy of Plaintiff's meal period claim.  Stafford v. Dollar Tree Stores, 2014 U.S. Dist. LEXIS 42564, at *23 (E.D. Cal. 2014) (it is "reasonable to estimate that *fifty percent* of meal periods were missed because the plaintiff alleged that 'members of the class were '*routinely*' denied meal periods' as part of a 'policy and practice'"); Coleman, 730 F. Supp. 2d at 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); Sanchez v. Russell Sigler, Inc., 2015 U.S. Dist. LEXIS 55667, at *16 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods."); Mortley v. Express Pipe & Supply Co., 2018 WL 708115, at *4 (C.D. Cal. 2018) (100% violation rate proper when allegations are "routine and systematic violations" of California's meal and rest period laws).

50.    While Defendant is entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods per workweek), Defendant will assume a 60 percent violation rate (3 missed meal periods per workweek) here.[3]

---

[3]/ As noted above, Defendant is entitled to assume a 100 percent violation rate, or at the very least a 50 percent violation rate based on the allegations in Plaintiff's Complaint.  See Complaint, ¶¶ 25-27, 52-54.  If Defendants were to assume a 100 percent violation rate, the amount in controversy for Plaintiff's meal period claim as to the Proposed Putative Class would be **$2,431,042** [($32.97/hour * 5 meal period premium payments) * 14,747 workweeks].

51.     Assuming a 60 percent violation rate, the amount in controversy for Plaintiff's meal period claim for the Proposed Putative Class is **$1,458,625** [($32.97/hour * 3 meal period premium payments) * 14,747 workweeks].

### c.     <u>Rest Periods</u>

52.     Again, Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided a meal period or a rest period.  <u>See</u> <u>Lyon</u>, 2010 WL 1753194, *4 (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).  The statute of limitations for recovery for meal or rest period premium pay under California Labor Code Section 226.7 pay is three years.  <u>Murphy</u>, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code in the Complaint, Defendant will conservatively assume that putative class members were not provided just one meal period and one rest period each workweek.").  Plaintiff's UCL claim extends the liability period of the meal and rest period violations claims to four years.  <u>See</u> Cal. Bus. & Prof. Code Section 17208.  As such, the UCL's four-year statute of limitations applies when determining the amount in controversy for this claim.

53.     For Plaintiff's rest period claim, Plaintiff alleges that "Plaintiff and other non-exempt employees were not provided with all uninterrupted 10-minute rest periods for every four hours worked, or major fraction thereof due to Defendant's uniform rest period policies/practices, operational requirements, and work demands. As a result, other non-exempt employees were and are unable to take a net 10-minute duty free rest periods (sic) for every major fraction of four hours worked. This includes a second rest period for shifts in excess of six hours, and a third rest period for shifts in excess of 10 hours in a workday."  <u>See</u> Complaint, ¶ 28.

54.     Plaintiff further alleges that "By not relieving all non-exempt employees of all duties during rest periods, Defendant failed to provide legally compliant rest periods."  <u>See</u> Complaint, ¶ 29.

55.    Plaintiff goes on to claim that "Each time non-exempt employees were unable to take a compliant rest period, Defendant failed and continues to fail to adequately pay rest period premium payments at the 'regular rate of pay.'"   See Complaint, ¶ 29.

56.    Plaintiff additionally alleges that "due to their unlawful rest period policy/practices and operational requirements/work demands, Defendant did not authorize and permit Plaintiff and members of the Class to take all rest periods to which they were legally entitled." See Complaint, ¶ 57.

57.    Again, the Complaint is silent as to the amount of the alleged rest periods Plaintiff claims to have been denied.  Nonetheless, as noted above, the Complaint contemplates at least a 50 percent violation rate, if not a 100 percent violation rate, and such rate can be properly assumed for purposes of calculating the amount in controversy of Plaintiff's rest period claim.  Stafford, 2014 U.S. Dist. LEXIS 42564, at *23 (it is "reasonable to estimate that *fifty percent* of meal periods were missed because the plaintiff alleged that 'members of the class were '*routinely*' denied meal periods' as part of a 'policy and practice'"); Coleman, 730 F. Supp. 2d at 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); Sanchez, 2015 U.S. Dist. LEXIS 55667, at *16 ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods."); Mortley, 2018 WL 708115, at *4 (100% violation rate proper when allegations are "routine and systematic violations" of California's meal and rest period laws).

58.   While Defendant is entitled to assume a 100 percent violation rate (*i.e.*, five missed rest periods per workweek), Defendant will assume a 60 percent violation rate (3 missed rest periods per workweek) here.[4]/

59.   Assuming a 60 percent violation rate, the amount in controversy for Plaintiff's rest period claim for the Proposed Putative Class is **$1,458,625** [($32.97/hour * 3 rest period premium payments) * 14,747 workweeks].

### d.   <u>Wage Statement Penalties</u>

60.   Labor Code section 226(e) provides for penalties in the amount of $50 for each initial alleged wage statement violation to an employee, and $100 for each subsequent violation, up to $4,000.

61.   Plaintiff seeks penalties under Labor Code Section 226, alleging that Defendant intentionally and willfully failed to provide Plaintiff and the Proposed Putative Class with complete and accurate wage statements in violation of Labor Code Sections 226.  <u>See</u> Complaint, ¶¶ 66-71.

62.   Plaintiff seeks penalties under Labor Code section 226(e), alleging that Defendant provided inaccurate wage statements by "fail[ing] to pay Plaintiff and the Wage Statement Subclass for all overtime wages, sick pay, and missed meal and rest period premiums at the appropriate legal rate…[failing] to include the required information on Plaintiff and the Wage Statement Subclass' wage statements, including but not limited to, the gross wages earned, the net wages earned in violation of Labor Code Section 226(a)(1, 2, 5, and 9)." <u>See</u> Complaint, ¶ 69. In other words, Plaintiff alleges a 100% violation rate on his wage statement claim.

---

[4]/ As noted above, Defendant is entitled to assume a 100 percent violation rate, or at the very least a 50 percent violation rate based on the allegations in Plaintiff's Complaint.  <u>See</u> Complaint, ¶¶ 27-29, 56-59.  If Defendant was to assume a 100 percent violation rate, the amount in controversy for Plaintiff's rest period claim as to the Proposed Putative Class would be **$2,431,042** [($32.97/hour * 5 rest period premium payments) * 14,747 workweeks].

63.    During the relevant one-year statute of limitations for a Section 226(e) claim on this claim, Defendant paid employees on a bi-weekly basis.  Defendant calculates the amount in controversy for wage statement penalties to be **$640,000** (160 non-exempt employees * a maximum of $4,000 per employee).

### e.    Waiting Time Penalties

64.    Under Cal. Labor Code Section 203, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

65.    Plaintiff alleges that Defendant "willfully failed to pay the Waiting Time Subclass for all hours worked, including all overtime wages, sick pay wages, vested vacation pay, and their meal and rest period premiums at the 'regular rate of pay', prior to or upon termination or separation from employment with Defendant as required by Labor Code Sections 201 and 202."  See Complaint, ¶ 76.  Pursuant to Cal. Labor Code Section 203, Plaintiff seeks waiting time penalties, which are at the employees' regular rate of pay, for a penalty of up to 30 days of pay.  See Complaint, ¶ 77.

66.    The statute of limitations for a claim under Cal. Labor Code Section 203 is three years.  Pineda v. Bank of Am. N.A., 50 Cal. 4th 1389, 1398 (2010). There were approximately 94 Proposed Putative Class members whose employment with Defendant terminated between January 1, 2021 and mid-January 2024.  See Bergstrom Decl., ¶ 7.  Defendant paid Proposed Putative Class members who separated at any time between January 1, 2021 and mid-January 2024 an average hourly rate at the time of separation of approximately $32.42.  See Bergstrom Decl., ¶ 8.

67.     Therefore, Defendant independently determined based on its own business records and on the allegations contained within Plaintiff's Complaint that Plaintiff alleged an amount in controversy for waiting time penalties damages (exclusive of interest) in the amount of **$731,395** accrued as of present ($32.42 * 8 hours per day * 30 days * 94 former alleged Proposed Putative Class members).

68.     In light of the above, the amount in controversy for Plaintiff's overtime claim, meal and rest period claims, waiting time penalties, and wage statement claim exceeds the jurisdictional minimum of $5,000,000.

### f.    <u>Amount in Controversy for Plaintiff's Other Claims</u>

69.     In addition to the claims identified above, Plaintiff also alleges that he and the Proposed Putative Class members were not provided all sick time, and were not reimbursed for business expenses in accordance with California law.  See Complaint, ¶¶ 22-24, 35-36, 60-65, 78-81.

70.     Thus, Plaintiff's other claims further increase the amount in controversy beyond the jurisdictional minimum of $5,000,000.

### g.    <u>Amount in Controversy for Attorneys' Fees</u>

71.     Plaintiff also alleges an entitlement to attorneys' fees.  <u>See</u> Complaint, Prayer.  Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy.  <u>Galt G/S v. JSS Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  In <u>Fritsch v. Swift Transp. Co. of Ariz., LLC</u>, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.

72.     Courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy.  <u>Garibay v. Archstone Communities LLC</u>, 539 F. App'x 763, 764 (9th Cir. 2013); <u>Rodriguez v. Cleansource, Inc.</u>, 2014 WL 3818304,

at *4 (S.D. Cal. Aug. 4, 2014); <u>Marshall v. G2 Secure Staff, LLC</u>, 2014 WL 3506608 (C.D. Cal. July 14, 2014); <u>Jasso v. Money Mart Exp., Inc.</u>, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012); <u>Ramos v. Schenker, Inc.</u>, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018); <u>Ramirez v. Benihana Nat'l Corp.</u>, 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019); <u>see also</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees").  Thus, an additional minimum amount of at least **$1,254,471** must be included in the amount in controversy ([at least $5,017,884 in alleged overtime violations, waiting time penalties, wage statement penalties, and meal and rest period violations] x 25% = $1,254,471).

73.    And the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation.  <u>Chavez v. Netflix, Inc.</u>, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery[.]"); <u>Smith v. CRST Van Expedited, Inc.</u>, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent[.]").

74.    For all of the forgoing reasons, Defendant alleges that the amount placed in controversy by Plaintiff's Complaint is at least **$6,272,355** which is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action.  The amount in controversy requirement for CAFA is therefore satisfied.

### h.    <u>No CAFA Exceptions Apply</u>

75.    CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. Sections 1332(d)(3)-(5).  However, none of these exceptions are applicable here.  The party resisting removal has the burden of

1   proving the existence of a CAFA exception.  King v. Great Am. Chicken Corp., 903

2   F.3d 875, 878 (9th Cir. 2018).

3       76.    The first is a discretionary exception based on the number of putative

4   class members found in the state where the action was filed.  See 28 U.S.C. §

5   1332(d)(3).  However, the exception only applies where the "primary defendants are

6   citizens of the State in which the action was originally filed."  Here, the action was

7   originally filed in California and, as noted above, Defendant is not a citizen of

8   California.  Thus, this exception does not apply.

9       77.    Similarly, 28 U.S.C. Section 1332(d)(4) contains an exception to

10  CAFA's grant of jurisdiction, based on the number of putative class members in the

11  state in which the action was filed.  However, this exception, too, only applies where

12  all primary defendants, or at least one defendant whose alleged conduct forms a

13  significant basis for the claims asserted by the proposed plaintiff class, is a "citizen

14  of the State in which the action was originally filed."  See 28 U.S.C. §§

15  1332(d)(4)(A)(i)(II) and 1332(d)(4)(B).  Given that this action was originally filed

16  in California, and that Defendant, whose alleged conduct forms a significant basis

17  for the claims asserted by the putative class, is not a California citizen, this

18  exception also do not apply.

19      78.    Finally, 28 U.S.C. Section 1332(d)(5) presents two additional

20  exceptions for defendants who are government entities, or putative classes which

21  number less than 100 in the aggregate.  See 28 U.S.C. §§ 1332(d)(5)(A)-(B).  Given

22  that Defendant is not a governmental entities, and that the proposed class numbers

23  are alleged to be greater than 100 individuals, these exceptions also do not apply.

24

25  **IV.    TIMELINESS OF REMOVAL AND CONSENT**

26      79.    As required by 28 U.S.C. Section 1446(b), this Notice of Removal is

27  timely filed within thirty (30) days after service of the Complaint on January 3,

28  2023.  See Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999)

(thirty-day window to remove does not run until formal service is complete under state law).

80.   Defendant is not required to investigate the identity of the unnamed defendants nor to obtain their consent for removal.  See Necombe v. Adolf Coors Co., 157 F.3d 686, 690-91 (9th Cir. 1998); 28 U.S.C. § 1441(a).  In any event, no Doe defendant has been served.  Defendant is not required to obtain consent to remove from defendants who have not been served.  See Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1429 (9th Cir. 1984), superseded by statute on other grounds as stated in Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1392 (9th Cir. 1988).  Therefore, Defendant has sufficient consent to remove the state court action.

## V.   NOTICE TO PLAINTIFF

81.   Contemporaneous with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record, at Bokhour Law Group, P.C., 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067 and Falakassa Law, P.C., 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of Contra Costa, California.

82.   In compliance with 28 U.S.C. Section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as **Exhibits A through F**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    WHEREFORE, having provided notice as is required by law, the above-
2   entitled action should be removed from the Superior Court for the County of Contra
3   Costa to this Court.

4

5   Dated:  February 1, 2024

6                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7

8                              By

9                                   MATTHEW M. SONNE
                                   MOLLY M. BROOKS

10

11                                 Attorneys for Defendant
                                   GOLD BOND BUILDING PRODUCTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4878-5616-8609.2            DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO
                                 28 U.S.C. §§ 1332(d), 1441, AND 1446